IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERTA KELLY and D. LAWRENCE OLSTAD, | Civ. No. 08-1421-AC |
| Plaintiffs, | FINDINGS AND RECOMMENDATION |
| v. | |
| U.S. BANK; BISHOP, WHITE & MARSHALL, P.S., a Washington Professional Services Company; and KRISTA WHITE, | |
| Defendants. | |

_____

U.S. BANK NATIONAL ASSOCIATION,

        Third-party Plaintiff,

FINDINGS AND RECOMMENDATION    1

CITY OF PORTLAND, a municipal corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., an inactive Oregon corporation; CREDIT CARD RECEIVABLES FUND INCORPORATED, an Ohio corporation dba UNIFUND CCR PARTNERS; ZB LIMITED PARTNERSHIP, a Delaware limited partnership dba UNIFUND CCR PARTNERS,

                Third-party Defendants.
_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiffs Roberta Kelly ("Kelly") and D. Lawrence Olstad (collectively "Plaintiffs") filed this lawsuit in December 2008 requesting injunctive and declaratory relief related to Defendant U.S. Bank's ("U.S. Bank") attempt to foreclose on Plaintiffs' residential property. U.S. Bank has since filed a counterclaim seeking foreclosure of that property against Plaintiffs and third-party defendants. A number of motions collectively filed by both the plaintiffs and U.S. Bank are now pending before the court, including U.S. Bank's summary judgment motion and its three motions for sanctions against Kelly (Docket Nos. 100, 109, 155).

U.S. Bank's three sanctions motions are the subject of this disposition. The collective focus of those motions is Kelly's multiple direct written contacts with U.S. Bank senior management employees about matters pertaining to the pending lawsuit, in violation of an order from this court. Much of the conduct occurred after the bank filed its first two motions for sanctions.

U.S. Bank's motions should be granted because the record conclusively proves that Kelly has wilfully and repeatedly initiated contact with U.S. Bank employees about the merits of this case.

Furthermore, the record establishes that Kelly has engaged in this conduct even after this court's express order to refrain from doing so, and that she has done so notwithstanding U.S. Bank responding to her contacts by filing a second motion for sanctions. Accordingly, sanctions should be imposed against Kelly in the form and she should be ordered to paying an amount of money equal to the reasonable attorney fees U.S. Bank incurred in bringing each of its three motions for sanctions, including the time spent by the bank's attorneys to confer with the bank's representatives about and respond to Kelly's conduct after the bank filed First and Second Motions for Sanctions.

*Relevant Procedural Background*

On December 5, 2008, U.S. Bank removed this case from Multnomah County Circuit Court to this court, where Plaintiffs had filed the case on November 13, 2008, to stop U.S. Bank from foreclosing on real property Kelly owned and at which Plaintiffs resided. (Complaint ¶¶ 1, 7.) Plaintiffs, who are *pro se*, alleged that U.S. Bank and the other defendants conspired with various persons and entities "to evade legal regulation and violate statutes prohibiting racketeering, fraud and profiteering, usury statutes, the Real Estate Sale Procedures Act (RESPA) and other controls in the granting of loans secured by residential real estate mortgages" for the purposes of artificially inflating real estate values and producing mortgage defaults, which would defaults would allow U.S. Bank and its alleged co-conspirators to "undertake foreclosures on a massive scale" and thereby acquire ownership in large portions of the country's residential real estate. (Complaint ¶¶ 11, 16, 17.) Plaintiffs filed their amended complaint on May 1, 2009. (Docket No. 19.)

The court held a discovery conference on June 25, 2009. The discovery conference addressed Plaintiffs' request for several categories of documents from U.S. Bank. The court ordered U.S. Bank to search for and locate those documents but stayed production of those documents and all other

discovery pending a then-contemplated settlement conference. (*See* Docket No. 23.) On July 13, 2009, the court ordered U.S. Bank to produce the subject documents (Docket No. 24). On July 24, 2009, U.S. Bank filed its Response to Court Orders Regarding Discovery, in which it confirmed it would produce the subject documents to Plaintiffs, or that certain of the documents did not exist or were not in its possession or control. (Docket No. 26.)

On August 10, 2009, the court set an in-person status conference for August 18, 2009. (Docket No. 27.) On August 17, 2009, Kelly sent an email to the court, copied to all counsel of record, attached to which was a five-page letter addressed to Richard K. Davis, U.S. Bank's CEO; Lee Mitau, U.S. Bank's Corporate Secretary and General Counsel; and Gail Van Horn, U.S. Bank's Vice President and Corporate Counsel. The letter explicitly referenced the pending federal court lawsuit by caption and case number, advised the addressees of the August 18, 2009, status conference, and told them that a "formal appearance" by them was required. Among other matters, the letter expounded on theories and evidence relevant to Plaintiffs' claims in the case. Kelly copied her email to Mitau's U.S. Bank email address.

Later on August 17, U.S. Bank's attorneys filed a "Motion to Require Plaintiffs to Communicate with U.S. Bank Through Counsel" ("Motion to Require"). (Docket No. 28.) The motion indicated that Plaintiffs agreed to stop contacting U.S. Bank personnel except for its in-house lawyers, including Mitau. In its supporting memorandum, U.S. Bank stated:

> During the time in which the case has been pending, plaintiffs (particularly Ms. Kelly), have repeatedly sent harassing and vitriolic e-mails and letters to U.S. Bank personnel, most recently to Richard Davis, U.S. Bank's chief executive officer, Lee Mitau, U.S. Bank's general counsel, and Gail Van Horn, corporate counsel, accusing U.S. Bank of "financial terrorism," fraud, concealment of fraud, and various other wrongdoing.

FINDINGS AND RECOMMENDATION        4

> In addition, counsel for U.S. Bank has repeatedly requested that plaintiffs direct all communication regarding this case to U.S. Bank's outside counsel. Plaintiffs have failed or otherwise refused to do so. Therefore, U.S. Bank brings this motion to preclude plaintiffs from contacting U.S. Bank directly and requiring plaintiffs to direct all communication to U.S. Bank's outside counsel, Miller Nash LLP.

(Memo. in Support of Motion to Require 2 (Docket No. 29).) Among the exhibits filed in support of the motion were copies of Kelly's August 17, 2009, email and letter. (Declaration of C. Marie Eckert, Exhibits 2 and 3 (Docket No. 30).)

The status conference convened on August 18, 2009. The court allowed Plaintiffs until September 1, 2009, by which to file a written response to the Motion to Require, and also allowed U.S. Bank fourteen days thereafter to file its reply. (*See* Docket No. 31.) The court also ordered that "[u]ntil the Court rules on defendant's motion (28), plaintiffs are barred from communicating directly in any way with the defendant or any of its representatives except through counsel of record in this case." (*See id*.) Although not reflected in the minute order, at this hearing the court also reminded Kelly of its prior admonitions not to directly email the court about the merits of the case.

The next day, August 19, 2009, Kelly hand-delivered a letter to the court in which she referenced the case number and the August 18, 2009, hearing, and which began "[y]ou did not order me to not write to you and therefore, this letter." (*See* Docket No. 33, Attachment at 1.) The letter occasionally alluded to the issues discussed at the August 18 hearing but mostly contained disconnected statements about a variety of topics which Kelly apparently believed related to the case. Consequently, on August 25, 2009, the court entered the following order:

> RECORD OF ORDER by Judge Acosta - On several prior occasions the court directed plaintiff, Roberta Kelly, not to email the court directly regarding the merits of this case and further directed her to email court staff only to request scheduling of matters with the court. On August 18, 2009, the court again directed plaintiff not to

FINDINGS AND RECOMMENDATION     5

>    email the court regarding this case's merits.  On August 19, 2009, plaintiff
>    hand-delivered a letter, dated August 18, 2009, to chambers, in which letter plaintiff
>    referenced this case and set out additional observations and comments not clearly
>    related to the case.  A copy of this letter is entered with this order.  Accordingly, it
>    is hereby ORDERED that plaintiff Roberta Kelly shall not communicate directly with
>    the court about the merits of this case, or about any matter unrelated to the case, by
>    email, typed or written correspondence, or in other fashion.  Plaintiff may make, by
>    email to Courtroom Deputy Paul Gale, requests to schedule hearings or status
>    conferences regarding the case, provided that such communications do not contain
>    discussions of the merits of the case or of any other matter.  Violations of this order
>    may result in sanctions, including but not limited to sanctions precluding the
>    introduction of evidence, dismissal of claims, or case-dispositive sanctions.

(Docket No. 33.) The court later amended this order to clarify that Kelly was to communicate with the court about the merits of the case only by pleadings filed through the court's electronic filing system. (Docket No. 38.)

On September 1, 2009, Plaintiffs filed their opposition to U.S. Bank's Motion to Require. Plaintiffs asserted that "[t]he letters touch on matters involved in this litigation, but primarily address Ms. Kelly's view of defendant US Bank's behavior in the marketplace in general or refer to US Bank's actions in matters not involved in this action." (Opp. to Motion to Require 1 (Docket No. 37).) Relying in part on the First Amendment, Plaintiffs argued that they could not be barred from communicating with U.S. Bank on matters not related to this case, and they urged the court to deny U.S. Bank's motion. (Opp to Motion to Require 2, 9-11, 14.)

Despite their opposition to a bar on their communications with U.S. Bank, on September 23, 2009, Plaintiffs joined with U.S. Bank in submitting a Proposed Stipulated Order Requiring Plaintiffs To Communicate With U.S. Bank Through Counsel." (Docket No. 44.) Relevant to the pending sanctions motions, the proposed order read: "1. Plaintiffs shall not communicate with U.S. Bank personnel directly regarding the subject(s) of this civil action and shall communicate with U.S.

Bank solely and exclusively through its outside counsel, Miller Nash LLP, on those subjects." The court signed the stipulated order on September 24, 2009. (Docket No. 45.)

On January 6, 2010, the court received a letter from Kelly, which letter referenced this case by caption and case number. At the end of her three-page letter, Kelly stated "I must have for my case to be considered legal, every portfolio of every government retiree that has received PROFITS from my 'mortgage notes' underwritten with respect to HEDGE FUNDS and MERS in an 'insurance umbrella,' et al., etc. as you know." That same day and in response to receiving Kelly's letter, the court set an in-person status conference for January 22, 2010, in part "to discuss Ms. Kelly's letter received by the Court on 1/6/10." (Docket No. 74.) On January 7, 2010, Kelly sent an email directly to the court, the "re line" of which read "RE: the courts [sic] electronic email to me from you Federal Magistrate Acosta | RE: My letter (Roberta Kelly) | January 22, 2010 Hearing in your Court | Kelly et al v. U.S. Bank et al Case Number: 3:08-cv-1421." Kelly sent three more emails directly to the court, one each on January 9, 11, and 19, as well as a letter dated January 10, 2010; each communication referenced this case by caption and case number, and contained narratives and purported evidence related to the case.

The status conference convened on January 22, 2010, during which the court addressed several pending matters, including Kelly's emails and letter sent to the directly to court. The court entered a minute order after the hearing to memorialize the relevant order given during the hearing: "(3) Ms. Kelly is directed by the Court to not send any further emails directly to Judge Acosta, or sanctions will be imposed. She may contact Courtroom Deputy, Paul Gale, by telephone or email regarding scheduling matters or other appropriate business with the Court." (Docket No. 82.)

On February 8, 2010, Kelly sent an email to various persons at Fidelity National Financial,

FINDINGS AND RECOMMENDATION       7

Inc., U.S. Bank's counsel of record, and this court. Although not a party in this case, Kelly apparently believed that Fidelity possessed documents critical to her case and appeared to ask the court to require Fidelity to produce those documents. Later that same day, this court's courtroom deputy responded to Kelly's email by reminding her:

> As stated many times by Judge Acosta in telephone conference, as well as in-person in court hearings, you may not litigate this matter by email. If you wish to communicate such things as mentioned in your email to the court it must be organized and filed using an appropriate document type and filing it with the court according to the local rules. . . . Please do not include me in any further emails of this type. I am available to schedule hearings, direct you to local rules, but I am not an intermidiary in your case, which is presently before this court.

On February 16, 2010, the court issued its order sanctioning Kelly. (Order for Sanctions (Docket No. 92).) After reviewing the relevant background, the court stated:

> At a January 22, 2010, hearing, the court repeated its warning to Kelly and informed her at that time that any further such emails would result in sanctions. Kelly acknowledged the court's warning and that she understood the court would impose sanctions for any further violations of the court's order not to email the court or the court's staff members regarding the merits of the case. . . . Despite her acknowledgments of these orders and of the possible consequences, Kelly continues to communicate with the court and its staff members regarding the merits of the case. Kelly's renewed violation of the court's orders presents the court with no alternative to the imposition of sanctions.

(Order for Sanctions 2.) The court found Kelly in violation of its past orders and imposed as a sanction that her emails be blocked from entering the court's email network. (*Id*.) The court concluded:

> Furthermore, Kelly is hereby advised and warned that any further violations of the court's orders prohibiting her from communicating in any way with the court or the court's staff members about the merits of the case or parties' disputes over any aspect of the case, or her violation of any other court order, including this order, will result in sanctions, including but not limited to preclusive sanctions as to some or all of her claims.

FINDINGS AND RECOMMENDATION    8

(*Id*. at 2-3.)[1]

On February 25, 2010, U.S. Bank filed its first of three sanctions motions against Kelly for violating the court's prior order prohibiting her from communicating with U.S. Bank's employees. ("First Motion for Sanctions" (Docket No. 100).) The subject of the motion was Kelly's February 24, 2010, communication to Mitau and other U.S. Bank senior executives which she sent by email, fax, and overnight mail, and a February 25, 2010, email sent only to Mitau. (Memo. in Support of First Motion for Sanctions 3 (Docket No. 101).) The communications did not explicitly reference this case, but both communications repeated in large part the arguments and "evidence" Kelly had conveyed in her prior direct communications to U.S. Bank in which she had referenced this case by caption and case number. (Declaration of C. Marie Eckert in Support of Motion for Sanctions (Docket No. 102), Exhibits 1-3.) U.S. Bank also sought monetary or preclusive sanctions, as well as its attorney fees incurred in its efforts to stop Kelly's continued communications with its employees and in bringing the motion. Kelly filed no opposition to this motion.

On March 3, 2010, U.S. Bank filed its Second Motion for Sanctions Against Roberta Kelly for Violation of Court Orders. ("Second Motion for Sanctions" (Docket No. 109).) This motion sought sanctions for Kelly's violation of the September 24, 2009, stipulated order, and the court's September 3, 2009, and February 16, 2010, orders prohibiting Kelly from contacting the court and court staff about the merits of the case. (Second Motion for Sanctions 2.) The subject of this motion was Kelly's email to the FBI accusing U.S. Bank of fraud and expressing her intent to file a motion on the issue in this case, a document captioned "motion to produce" directing U.S. Bank to appear

---

[1] Kelly later filed a motion, with supporting memorandum, to vacate the court's February 16, 2010, sanction order. (*See* Docket Nos. 118, 119.) The court denied Kelly's motion. (*See* Docket No. 122.)

FINDINGS AND RECOMMENDATION        9

before this court, and a March 2, 2010, email to Mitau and other U.S. Bank senior executives again reiterating her various conspiracy allegations and purporting to direct the bank to produce certain loan paperwork, and further instructing that it "must prove you are the actual owners of the 'debt'", among other facts. (Declaration of C. Marie Eckert in Support of Second Motion for Sanctions (Docket No. 111), Exhibits 1-3.) In its Second Motion for Sanctions, U.S. Bank provided an overview of the court's previous orders and requested preclusive and monetary sanctions against Kelly "of a sufficient magnitude to deter Ms. Kelly from her pattern of repeatedly violating court orders." (Memo. in Support of Second Motion for Sanctions 4.) U.S. Bank also asked for an award of attorney fees incurred in its efforts to stop Kelly's continued communications with its employees and in bringing the motion. (*Id.*)

On March 10, 2010, Kelly filed her opposition to U.S. Bank's Second Motion for Sanctions. ("Opposition Document" (Docket No. 117).)² Nothing in Kelly's Opposition Document explained or addressed her continued communications to U.S. Bank employees or responded to the bank's request for sanctions. Instead, Kelly asked the court "for an International Special Prosecutor in the U.S. District Court, (see GREECE, PERS OREGON, et al., etc.), to cease and desist the continuance of global investors' fraudulent inducement and transference of the wealth of America and Americans, which these global entities do not and cannot, according to the **US Constitution, contracts, mathematics, physics and thus, science ("the maths"): <u>legally own</u>**. (Opposition Document 5; bold typeface and underline in original.)

---

² Kelly captioned the document "MOTION TO PRODUCE AND PRODUCTION IN THE COURT AS EXHIBITS, ORAL ARGUMENT REQUESTED OBJECTING SANCTIONS AND ABSENT DISCOVERY, ALSO PERS OREGON, SEC, ETC." The court elected to treat the document as Kelly's objection to U.S. Bank's Second Motion for Sanctions. (*See* Docket No. 116.)

FINDINGS AND RECOMMENDATION    10

On May 17, 2010, U.S. Bank filed its third sanctions motion ("Third Motion for Sanctions (Docket No. 155).) This motion centered on Kelly's communications to U.S. Bank employees after the pendency of the bank's first two sanctions motions. U.S. Bank cited a May 3, 2010, email that Kelly sent to Mitau, and five May 13, 2010, emails that Kelly sent to Mitau. (Memo. in Support of Third Motion for Sanctions (Docket No. 156) 3-4.) Kelly's emails again addressed various aspects of the merits of her case against the bank and reiterated her accusation of fraud against the bank and its attorneys. (Declaration of C. Marie Eckert in Support of Third Motion for Sanctions (Docket No. 157), Exhibits 1-5.) U.S. Bank renewed its request for sanction "of a sufficient magnitude" to stop and deter Kelly, and again asked for preclusive sanctions and an award attorney fees incurred in its efforts to stop Kelly's continued communications with its employees and in bringing the motion. (*Id*. at 4-5.) Kelly filed no opposition to the Third Motion for Sanctions.

### *Legal Standards*

The court's sanctions authority originates from various sources, including the court's inherent power to punish for violations of its orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). *See also Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (9th Cir. 1994) (district court possesses inherent power to control litigants).[3]  Imposition of sanctions under the court's inherent power is proper where, among other behaviors, a party has acted in bad faith or wantonly. *In re Intel Securities Litigation*, 791 F.2d 672, 675 (9th Cir. 1986). *See also Lahiri v. Universal*

---

[3] Other sources of the court's sanction power include Federal Rule of Civil Procedure 11, which governs papers filed with the court, and 28 U.S.C. § 1927, which applies to attorneys "who so multipl[y] the proceedings in any case unreasonably and vexatiously[.]" *Chambers*, 501 U.S. at 41-42 & n.6, quoting 28 U.S.C. § 1927. U.S. Bank's motion seeks to invoke the court's inherent power to impose sanctions for violation of its orders.

FINDINGS AND RECOMMENDATION      11

*Music and Video Distribution Corp.*, No. 09-55111, 2010 WL 2246401, at *1 (9th Cir. June 7, 2010) ("[S]anctions imposed under the district court's inherent authority require a bad faith finding."). Bad faith includes acts substantially motivated by " 'vindictiveness, obduracy, or mala fides.' " *Id.*, quoting *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 182 (D.C. Cir. 1980). The Ninth Circuit has not decided whether a court's bad faith finding must be supported by clear and convincing evidence, *Lahiri*, 2010 WL 2246401, at *1, but other circuits have so held. *See, e.g., Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1476-77 (D.C. Cir. 1995) (observing that sanctions under court's inherent power are punitive and thus require support by clear and convincing evidence, and noting that the First, Third, Fifth, Eighth, and Eleventh Circuits have applied the clear and convincing standard to the district court's exercise of its inherent power to impose sanctions).

The inherent power to sanction "must be exercised with restraint and discretion." *Id.*, citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. 44-45. With this discretion comes responsibility; in determining the facts on a sanctions motion, a reviewing court will not reverse the lower court's sanctions order "absent a definite and firm conviction that the district court made a clear error of judgment." *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 379 (9th Cir. 1988). *See also Lahiri*, 2010 WL 2246401, at *1 (district court's imposition of sanctions is reviewed for abuse of discretion and its findings of fact for clear error).

An appropriate sanction may include dismissal of a lawsuit, *id.*, although dismissal is a "harsh remedy and should only be imposed in " 'extreme circumstances.' " *Hamilton Copper &*

FINDINGS AND RECOMMENDATION        12

*Steel Corp. v. Primary Steel, Inc.*, 898 F.2d 1428, 1429 (9th Cir. 1990), quoting *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir.1986). Accordingly, before resorting to dismissal as a sanction the district court must consider the efficacy of lesser sanctions and the lack of prejudice to the other party. *Hamilton Copper & Steel Corp.*, 898 F.2d at 1429; *U.S. v. National Medical Enterprises, Inc.*, 792 F.2d 906, 921-13 (9th Cir. 1986). Lesser sanctions include a formal reprimand, a fine, and the imposition of costs or attorney fees, *Malone v. U.S. Postal Service*, 833 F.2d 128, 132 n.1 (9th Cir. 1987), but whichever form of sanction the court chooses, it must explain why it has chosen the particular sanction from the range available alternatives. *Republic of Philippines*, 43 F.3d at 74. Although courts *may* impose sanctions for the failure to obey court orders, they are not required to do so. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995).

*Discussion*

I.Violation of the September 24, 2009, Order.

At the outset, the court observes that three facts critical to the court's evaluation of Kelly's conduct have been established. First, Kelly never disputed that she directly communicated with U.S. Bank's senior executives regarding this case. Second, Kelly never contested that the court's September 24, 2009, order, which prohibited her from communicating directly with U.S. Bank's employees, applied to her conduct. Third, Kelly has not disputed that her conduct violated the court's September 24, 2009, order. But even if Kelly had disputed one or more of these three key facts, the record shows beyond credible dispute that she continued to directly contact the bank's employees after the court entered its September 24, 2009, forbidding her from doing so, and that she did so in precisely the same manner that gave rise to the court entering that order.

FINDINGS AND RECOMMENDATION13

An additional relevant fact is that Kelly persisted in her conduct even after U.S. Bank filed its first two sanctions motions. The record also is conclusive on this point. Apparently unconcerned by the specter of sanctions being imposed against her, Kelly continued her direct communication with bank employees after U.S. Bank filed its First Motion for Sanctions and its Second Motion for Sanctions. Although U.S. Bank has reported no further communications from Kelly to its senior executives or any other of its employees following its filing of its Third Motion for Sanctions, the court is not convinced that a cause-and-effect relationship between the two facts exists; Kelly has previously voluntarily suspended her conduct only to later resume it.

Another relevant fact is that Kelly understood the court's orders and the possible consequences of violating them. She previously acknowledged her understanding that the court had ordered her to not communicate with U.S. Bank senior executives and she soon thereafter joined in a stipulated proposed order in which she explicitly agreed to refrain from that conduct. Once the bank began to file its sanctions motions, Kelly never responded to any of those motions by claiming to not have understood the court's order or the requirements the court's order imposed upon her; to the contrary, she continued her conduct despite of the bank's first two sanctions motions. The record leaves no question that Kelly knew the court had ordered her to stop communicating directly with U.S. Bank employees about this case and that she decided to continue to do so despite that knowledge, and despite being aware that her conduct could result in sanctions.

Finally, relevant too is that Kelly has previously demonstrated an unwillingness to comply with this court's orders. Notwithstanding the court's many warnings and then orders that she refrain from communicating by email with the court and the court's staff about the merits of the case, Kelly persisted in that very conduct. This, even though in the court's February 16, 2010, MO, it warned

her that sanctions would be imposed for her violation of that order "or her violation of any other court order" Ultimately, the court imposed the sanction of blocking Kelly's ability to send emails into the district's email system. Kelly's response – or, more accurately, failure to respond – to orders from the court further confirms that far from misunderstanding or mistake, Kelly's violation of orders is the product of her knowing and intentional choice to disregard them.

Accordingly, the court finds that the record here permits no conclusion other than that Kelly's violation of the court's September 24, 2009, order was knowing, intentional, and deliberate. Her continued communications with U.S. Bank employees about the merits of this case is conduct that fits within the bad faith standard necessary to support imposition of sanctions under the court's inherent sanctions power. Thus, sanctions against Kelly are appropriate.

II.     Appropriate Sanction.

In its three sanctions motions, U.S. Bank requests the court impose sanctions "of a sufficient magnitude" to deter Kelly, but in none of its motions does the bank ask the court to impose dismissal as a sanction for her conduct. Indeed, Kelly's conduct, while knowing, persistent, and stubborn, is not sufficiently egregious or prejudicial to warrant a dismissal sanction. The Ninth Circuit requires district courts to apply a five-part test in determining whether dismissal is an appropriate sanction:

> "Because the sanction of dismissal is such a harsh penalty, the district court must weigh five factors before imposing dismissal: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Porter v. Martinez,* 941 F.2d 732, 733 (9th Cir.1991) (citations and internal punctuation omitted). "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a . . . dismissal sanction. Thus the key factors are prejudice and the availability of lesser sanctions." *Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir.1990).

*Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948 (9th Cir. 1993).

Kelly's conduct does not satisfy this test. Her communications to U.S. Bank's senior executives were disruptive to the bank and its lawyers in this case, and she forced the bank to spend time and money both to respond to her communications and to file motions with the court to stop those communications. But, Kelly's conduct did not impede the court's scheduling or the case's progress overall. Furthermore, her conduct caused no delay of court-scheduled deadlines. U.S. Bank should not have been forced to deflect Kelly's direct communications and then also required to seek court intervention to stop Kelly's conduct, but her conduct did not result in prejudice to the bank or to its ability to defend itself on the merits. And, Kelly's conduct did not impair the parties' ability to obtain a merits-based resolution of the case. Finally, less drastic sanctions are available which will sufficiently address and deter Kelly's misconduct.

With dismissal eliminated from the range of appropriate sanctions, the court must decide which form of lesser sanction should be imposed. At this juncture in the case, preclusive sanctions are as yet too severe. Kelly's conduct, while repeated, ultimately was episodic and has again ceased. Her conduct neither precluded U.S. Bank from obtaining discoverable evidence nor impaired its ability to defend itself. Her conduct did not delay the case or disrupt scheduling for completion of the major phases of litigation in the case. In short, striking Kelly's complaint or any part of it, or precluding her from presenting evidence in further proceedings in the case, are sanctions not warranted at this time.

Of the remaining sanction alternatives, the court concludes that imposing attorney fees as a sanction for Kelly's conduct is an appropriate sanction in light of the conduct at issue and the circumstances of this case. "[A]n assessment of attorney fees is undoubtedly within a court's

FINDINGS AND RECOMMENDATION     16

inherent powers[.]" *Chambers*, 501 U.S. at 45. Kelly's conduct, even though it caused no substantial prejudice to U.S. Bank and did not disrupt court-scheduled deadlines, violated this court's clear order. "An inherent powers sanction is meant to 'vindicat[e] judicial authority.' " *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir. 1995), quoting *Chambers*, 501 U.S. at 55. In vindicating the court's authority with an attorney fee sanction, the amount of the fee award is intended to achieve a purpose different from providing a substantive remedy to the aggrieved party. *Mark Industries*, 50 F.3d at 733.

Here, attorney fees as a sanction should be awarded against Kelly in an amount equal to the amount which will compensate U.S. Bank for the time its attorneys reasonably incurred to respond to Kelly's direct communications to the bank's senior executives about this case, and to prepare, file, and argue its three motions for sanctions. An award of fees vindicates the court's authority by giving meaning to the court's orders and consequence to their violation. Also, the amount itself, which equates to the cost U.S. Bank incurred to pay its attorneys to stop Kelly's conduct, bears a cause-and-effect relationship to Kelly's conduct; Kelly should be made to pay for the value of the time U.S. Bank's attorney spent responding to her conduct in violation of this court's order. And, against the backdrop of her allegations against the U.S. Bank, requiring Kelly to pay money to the bank should serve as sufficient and meaningful punishment for violating the court's order in light of her oft-stated low regard for the bank. Finally, the payment of fees and its amount serve as a deterrent to future violations of court orders, as more severe sanctions, which include the possibility of dismissal of Kelly's case, will result if Kelly commits any further violation of current or future court orders.

*Sanction*

Attorney fees as a sanction should be imposed against Kelly for her violation of the court's

September 24, 2009, order prohibiting her from directly communicating with U.S. Bank employees about this case. U.S. Bank should submit billing records reflecting the time spent by its attorneys to respond to Kelly's communications to U.S. Bank, and to brief and argue its First, Second, and Third Motions for Sanctions. All time records submitted must comply with this Ninth Circuit and this district's requirements for supporting documentation submitted in connection with attorney fee petitions.

*Conclusion*

For the reasons stated, Defendant's U.S. Bank's Motion for Sanctions (#100), Second Motion for Sanctions (#109), and Third Motion for Sanctions (#155) should be GRANTED and payment of attorney fees should be imposed against Kelly as the appropriate sanction for her violation of this court's order.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due July 9, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 25th day of June, 2010.

             s/ John V. Acosta
             JOHN V. ACOSTA
            United States Magistrate Judge